Jerry Ray BARNES, Plaintiff-Appellee,

v.

GENERAL MOTORS CORPORATION,
Defendant-Appellant.

No. 75–1975.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1977.

Rehearing Denied April 28, 1977.

W. Swan Yerger, Jackson, Miss., for defendant-appellant.

Stephen L. Beach, III, Jackson, Miss., for plaintiff-appellee.

Before COLEMAN and HILL, Circuit Judges, and SMITH,* District Judge.

JAMES C. HILL, Circuit Judge:

This is a products liability case involving an injury sustained by the plaintiff, Jerry Ray Barnes, when his 1968 Z–28 Camaro automobile manufactured by the defendant,

* District Judge for the Northern District of Mississippi, sitting by designation.

General Motors Corporation, left the wet blacktop of Clinton Boulevard just outside the city limits of Jackson, Mississippi, and crashed into a gas meter, tree and concrete culvert at approximately 5:00 a. m. on March 21, 1970. The plaintiff alleged, *inter alia*, that the accelerator pedal stuck causing him to lose control of the automobile and that this was due to negligent design of the accelerator linkage, spark plug wire bracket and engine mounts. The jury returned a verdict in favor of the plaintiff from which this appeal has been prosecuted. We reverse.

Plaintiff's evidence was, in brief, as follows: He was alone driving east on Clinton Boulevard at a speed of approximately 50 miles per hour until he approached the point where the road makes an "S" curve. Plaintiff slowed down, shifted into second gear and proceeded through the "S" curve at a speed of about 20 miles per hour. As he came out of the "S" curve at a point where Clinton Boulevard straightens out to head east, plaintiff pressed down hard on the accelerator. When the car reached a comfortable speed, plaintiff removed his foot from the accelerator pedal but the car continued to accelerate rapidly. Plaintiff attempted to raise the accelerator pedal with his foot but was unable to do so. While he was looking down to see what was wrong, the car left the road, hit obstructions and turned over. Plaintiff's theory was that the left engine mount separated and that the engine acceleration was sufficient to cause the engine to lift up thus binding the accelerator linkage with the spark plug wire bracket. It appears that this theory was brought to the attention of the plaintiff by the defendant in a recall campaign conducted approximately two years after the occurrence of the accident.

There was also substantial evidence indicating that the plaintiff himself may have been negligent in causing the accident. Two witnesses testified that the plaintiff was intoxicated at the time of the accident. In addition, the plaintiff stated on at least two occasions immediately following the accident that he had fallen asleep at the wheel. While the evidence was thus conflicting, the jury awarded plaintiff damages in the amount of $25,000. While the defendant raises numerous contentions on this appeal, we conclude that the admission of the evidence relating to an experiment conducted by the plaintiff's expert witness, Dr. Charles Carley, was error mandating a new trial.

It is undisputed that unless the left motor mount of the plaintiff's car separated prior to the time of the accident, the engine lift would have been insufficient to cause the accelerator linkage to bind. The plaintiff's expert testified that in his opinion the mount did separate prior to the accident. In addition, the plaintiff testified that the acceleration of the automobile increased prior to the time that the automobile left the road. Thus, a reasonable inference could be drawn from this evidence that the acceleration was caused by the constant pressure being applied to the accelerator linkage by the lift of the engine. On the other hand, the defendant's expert testified that in his opinion the motor mount on the car separated as a result of the impact of the accident itself.

However, uncontradicted evidence disclosed that the type of engine mounts on the plaintiff's car was so-called "roll-stop" mounts. The purpose of the roll-stop design was to prevent engine lift even though the mount itself might separate. The plaintiff's expert was allowed to testify, over objection, as to the results of a test which he performed on another Z–28 Camaro automobile. In the test car, which had been modified for use as a race car, there were no engine mounts. The engine mounts had been removed and the engine was bolted directly to the frame. During the course of the experiment the left engine mount was unbolted and the bolt on the right mount was loosened. Upon accelerating, the lift of the left side of the engine caused the engine to press against the accelerator linkage which stuck in place. Yet, since the engine mounts had been removed, the roll-stop feature, admittedly found on the plaintiff's automobile, could not be test-

ed in order to determine whether, even though the engine mount might separate, the roll-stop feature would prevent the engine lift from binding the accelerator.

■■■ Upon a careful review of the evidence presented in this case we conclude that the admission of the results of this experiment was reversible error. As a general rule, the district court has wide discretion to admit evidence of experiments conducted under substantially similar conditions. *Booth v. Garan, Inc.,* 476 F.2d 591 (5th Cir. 1973); *Council v. Duprel,* 250 Miss. 269, 165 So.2d 134 (Miss.1964); *Building Insulators, Inc. v. Stuart,* 243 Miss. 287, 136 So.2d 613 (Miss.1962). However, the burden is upon the party offering evidence of out-of-court experiments to lay a proper foundation demonstrating a similarity of circumstances and conditions. *See Navajo Freight Lines v. Mahaffy,* 174 F.2d 305, 310 (10th Cir. 1949). As stated in *Illinois Central Gulf Railroad Company v. Ishee,* Miss., 317 So.2d 923, 926 (Miss.1975):

> In order for an experiment of this type to be admissible in evidence, it is not required that all the conditions shall be precisely reproduced, but they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed.

The problem presented by the use of experiments is the danger of misleading the members of the jury who may attach exaggerated significance to the test. *See generally,* McCormick on Evidence § 202 (2d Ed.1972).

Upon application of this standard we conclude that the testimony of the plaintiff's expert as to the results of the experiment conducted by him on another 1968 automobile under significantly different circumstances from those admittedly existing at the time of the accident was inadmissible and the objection thereto should have been sustained. Most significantly, in the test car there were no engine mounts as the engine had been bolted directly to the frame by the owner. In an attempt to simulate the actual condition of the plaintiff's automobile, plaintiff's expert removed the bolt on the driver's side and loosened the bolt on the passenger's side. The test automobile was then driven down a dry street and the accelerator was mashed to the floor. Not surprisingly, the engine lifted binding the accelerator linkage. This experiment merely demonstrated well known physical happenings resulting from universally accepted principles disputed by no one.

In the context of this case, this experiment had no probative value whatsoever. The contested issues in this case were whether the engine mount on the plaintiff's automobile separated prior to the accident and, if so, whether the roll-stop feature on the engine mount would have prevented the engine from lifting and binding the accelerator linkage. The experiment conducted by the plaintiff's expert shed absolutely no light on either of these issues. Instead, the experiment demonstrated the correctness of a fact not in dispute. That is, if a Z–28 Camaro engine is disconnected from the frame, the engine lift will cause the accelerator linkage to bind. In fact, the recall bulletins issued by the defendant admitted as much. The test car had no engine mounts or roll-stop feature. Thus, the experiment was not a fair comparison in respect to any contested issue in the case. We thus conclude that it was error to admit the results of the test.

We also conclude that the erroneous admission of this evidence relating to the experiment was prejudicial and under the circumstances reversible error. This results from the fact that the experiment was likely to be misunderstood by the jury and given exaggerated weight when the evidence was of no probative value. Of course, insofar as the experiment shed no light on any contested issue, any weight attached to the results of the experiment was exaggerated. More importantly, the experiment purported to simulate the circumstances of the plaintiff's accident. The defendant urged that the accident resulted from the plaintiff's own negligence. The results of the experiment purported to coincide with the plaintiff's theory of how the

accident occurred. In fact, the circumstances of the experiment were such that the result was a foregone conclusion. The drama of the test, demonstrating nothing probative, was calculated to cause the jury to accept the plaintiff's theory over the defendant's evidence. Under the circumstances we conclude that the admission of the results of the experiment was highly prejudicial and reversible error.

The defendant also contends that the district court erred in allowing Dr. Carley to testify as an expert. We disagree. The qualifications required of an expert witness before he may give an opinion is a matter committed to the broad discretion of the trial judge. *Crawford v. Worth*, 447 F.2d 738, 740 (5th Cir. 1971). The defendant's objections to the plaintiff's expert go to the weight of his testimony and not to its admissibility.

On the basis of the foregoing, the judgment of the district court is reversed and the case remanded for a new trial.

REVERSED AND REMANDED.