**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 17, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
for the Fifth Circuit

No. 05-20424

JESSICA HAFSTIENN, Individually and as Next
Friend of Taylor Hafstienn, Deceased; KEVIN
HAFSTIENN, Individually and as Next Friend of
Taylor Hafstienn, Deceased,

Plaintiffs-Appellants,

versus

BMW OF NORTH AMERICA, LLC; ET AL,

Defendants,

BMW OF NORTH AMERICA, LLC,
a Delaware Corporation; BMG AG

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

(4:03-CV-1646)

Before DeMOSS, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has
determined that this opinion should not be published
and is not precedent except under the limited

Plaintiffs-Appellants Jessica and Kevin Hafsteinn ("Appellants") appeal the district court's entry of final judgement in favor of BMW of North America, L.L.C. and BMW AG (collectively "Appellees"). Appellants argue that final judgment was based solely on the court's erroneous exclusion of Appellants' "crash test" evidence and expert testimony. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2000, Jessica Hafsteinn was driving a 1999 BMW 323i with her six-year-old son, Taylor, riding in the right rear seat. While making a left turn at an intersection, Mrs. Hafsteinn failed to yield the right-of-way and turned into oncoming traffic. As a result, a speeding GMC truck violently hit the right side of her BMW. The collision caused the BMW to split apart and roll over. Taylor was killed.

Appellants, individually and as next friend of Taylor, brought various product liability claims against Appellees based on the following theories: (1) manufacturing defect, (2) design defect, and (3) failure

circumstances set forth in 5TH CIR. R. 47.5.4.

2

to warn. Generally, Appellants' contention was that their BMW 323i should not have split apart in the crash; and, because it did split apart, Taylor was thrown from the vehicle, hit his head on the pavement, and was killed.

More specifically, Appellants alleged that their BMW's "spot welds"--the locations where different metal pieces of the vehicle are welded together--were defective. Appellants contended that many of the spot welds were located too close to the edges of the pieces they connected. And this, in turn, weakened the vehicle such that it split apart upon impact.

In an order preceding the evidentiary rulings at issue on appeal, the district court granted partial summary judgment in Appellees' favor dismissing all but Appellants' manufacturing defect claim. Appellants do not challenge that ruling.

With only the manufacturing defect claim remaining, Appellees then filed motions to exclude (1) the testimony of each of Appellants' experts, and (2) Appellants' crash test evidence. After a three-day hearing, the district court excluded each piece of evidence. Without the crash

test and expert testimony, Appellants conceded that they lacked sufficient evidence to prove causation and stipulated to an order granting summary judgment in Appellees' favor. This timely appeal followed.

**DISCUSSION**

To prevail on their manufacturing defect claim, Appellants were required to show that: (1) their BMW 323i did not conform to BMW's own manufacturing plans and specifications; (2) the deviation made their BMW unreasonably dangerous; and (3) the deviation was a producing cause of Taylor's injuries. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000). Again, Appellants conceded below, as they do on appeal, that without their crash test and expert testimony, they were unable to prove the causation element. It is important to note at this stage that, under Appellants' theory of the case, the causation element required Appellants to make two showings: first, that Taylor would not have sustained his injuries had he not been ejected from the BMW; and second, that a properly constructed BMW (one with spot welds built to BMW's own specifications) would not have

4

split apart allowing Taylor's ejection. Only after making both showings could Appellants prove that, but for the allegedly defective spot welds, Taylor would have survived the accident.

To establish causation, Appellants attempted to introduce the crash test and the testimony of three experts: (1) Thomas Grubbs, (2) Dr. McLellan, and (3) Dr. Nicodemus. The crash test was excluded on basic relevancy principles, *see* FED. R. EVID. 401-403, and nearly all of the expert testimony was excluded pursuant to various components of Federal Rule of Evidence 702.

We review the district court's decision to exclude evidence, including expert testimony, for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 (1997).

1. <u>Appellants' Crash Test Evidence</u>

Appellants planned to introduce video footage of a crash test performed by one of their experts. The video showed a collision between a GMC truck and a properly constructed Volkswagen Passat. The crash test was supposed to help Appellants prove causation; namely, that

a similar vehicle with properly constructed spot welds would not have split apart in the accident.

The district court excluded the test as irrelevant under Rule 401 because the Volkswagen Passat's performance was completely unhelpful in deciding whether Appellants' BMW 323i had a manufacturing defect that caused Taylor's injuries in the accident. In the alternative, the court found the video footage too confusing and misleading under Rule 403.

Appellees on appeal agree with the district court that the test is irrelevant because the car in the test is a Volkswagen, not a BMW. On the other hand, Appellants argue that the BMW in the accident and the Volkswagen used in the test are "substantially similar," which is all that is required for the test to be relevant. *See Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977).

We agree with the district court that the test conducted by Appellants' expert is irrelevant to the issue of causation. A comparison of the accident to the test, with a focus on the differences between the two,

6

compels this conclusion.

First, as the district court noted, the Volkswagen Passat and the BMW 323i are different vehicles. The important differences between the two cars are not that they have different names or that they are manufactured by different companies; rather, it is that they are materially dissimilar in design and final product. For example, the Passat is longer than the 323i, has a longer wheel base, has a different center of gravity, and has a different tip-over ratio.

The Passat also weighs significantly less than the 323i. Because of the weight difference, Appellants' expert had to fill the Passat's fuel tank with 75 pounds of lead shot, fill its oil pan with 100 pounds of lead shot, and add an additional 169 pounds of lead ingots and water to various other parts of the vehicle. After adding this weight, which alone may have greatly skewed the results of the test, the Passat still weighed less than Appellants' 323i.[1]

---

[1]In addition to these obvious differences, Appellants failed to provide the district court with evidence that the vehicles did not differ in other

7

Second, beyond Appellants' use of a different and dissimilar vehicle, other circumstances surrounding the test differed from those surrounding the actual crash. Namely, it is undisputed that Appellants' BMW was traveling at approximately 16 miles per hour when the GMC collided with it; yet the Passat in the test was stationary.

In sum, Appellants used a different and dissimilar vehicle. The vehicles unquestionably differed in length and weight, and perhaps in other respects, such as rigidity and plasticity. And, the test vehicle was stationary even though Appellants' BMW at the time of the accident was not. Because of these material differences between the accident and the crash test, we cannot say that the district court's decision to exclude the test was an abuse of discretion[2].

2. <u>The Exclusion of Appellants' Experts</u>

respects, such as their spot weld designs or overall rigidity or plasticity.

[2]To further support the conclusion that the test differed from the accident, we note that the BMW and the GMC in the accident rolled over after impact; the Passat and the GMC in the crash test did not.

As mentioned above, Appellants' theory was that a properly constructed BMW would not have split apart in the accident; and Appellants conceded that they could not prove this theory without their crash test and expert testimony. Because, as we discussed above, the crash test was properly excluded, Appellants sole remaining source of causation evidence was the testimony of their three experts. The district court excluded most of the experts' testimony under Rule 702. Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Keeping in mind that Appellants' experts had to (1) comply with Rule 702 and (2) create a genuine issue of material fact as to causation, we turn now to the excluded testimony of each expert.

a. <u>Thomas Grubbs</u>

Appellants' first expert, Thomas Grubbs, has a

bachelor's and master's degree in mechanical engineering. He has been an engineer for forty-three years and has conducted approximately 2000 accident reconstructions. Appellants intended to use Grubbs, who conducted their crash test, to explain the test results to the jury.

The district court excluded Grubbs' testimony because he was not a qualified expert in the field of accident reconstruction and because he relied upon inaccurate data in conducting his test. *See* FED. R. EVID. 702.

We need not address either of the district court's stated reasons for excluding Grubbs' testimony. The sole purpose of his testimony was to explain the crash test to the jury. Because we have already determined that the district court properly excluded the crash test, Grubbs' testimony relating to that test would not have "assist[ed] the trier of fact to understand the evidence or to determine a fact in issue." *See* FED. R. EVID. 702. Therefore, even though it did so for different reasons, the district court did not abuse its discretion in excluding Grubbs' testimony.

b. Dr. McLellan

10

The district court recognized Dr. McLellan as a qualified metallurgist, *i.e.*, someone who studies the structure and properties of metals. Appellants affirmatively state in their brief that they did not intend to use Dr. McLellan to prove causation; rather, they intended to use him to show only that the BMW's allegedly defective spot welds made the car less "crashworthy." Similarly, the district court recognized that Dr. McLellan was unable to testify to causation because he stated that he did not know whether a properly constructed BMW 323i would have split apart in the accident.

Appellants conceded that without their experts, they could not prove causation. Thus, unless we determine not only that the expert testimony was improperly excluded, but also that the expert testimony, in light of other admissible evidence, would have created a genuine issue of material fact regarding causation, we must affirm the district court's entry of summary judgment in favor of Appellees. Dr. McLellan himself, Appellants, and the district court all agree that Dr. McLellan was not

expected to and did not testify to causation. Therefore, we turn now to Appellants' last expert, Dr. Nicodemus.

### c. Dr. Nicodemus

Dr. Nicodemus has a Ph.D. in biomechanics and osteopathic medicine. His qualifications in those fields are extensive, and were not attacked by Appellees or questioned by the district court.

Appellants expected Dr. Nicodemus to establish that Taylor died because he flew out of the vehicle and hit his head on the pavement, and not because he was immediately struck in the head when the GMC and BMW collided. This would have proven that, but for the BMW splitting apart, Taylor likely would have survived the crash. The court excluded Dr. Nicodemus' testimony for two reasons: (1) his qualifications were irrelevant to those opinions, and (2) his methodology in arriving at those conclusions was either flawed or non-existent. *See* FED. R. EVID. 702.

As was the case with the exclusion of Dr. McLellan's testimony, we need not address the district court's two stated reasons for excluding Dr. Nicodemus's testimony.

12

Even if his testimony had been admitted, Appellants still would have failed to raise a genuine issue of material fact regarding causation. Dr. Nicodemus was going to opine that, had the BMW not split apart, Taylor would have survived. While this certainly would have been relevant to the issue of causation, it would not have by itself established causation. Appellants still would have needed to establish that a properly constructed BMW--one with spot welds built to BMW's own plans and specifications--would not have split apart in the accident.[3]

Like Appellants' other two experts, Dr. Nicodemus was not prepared to testify that a properly constructed BMW would not have split apart. Therefore, we need not address whether his testimony was properly excluded under Rule 702 because, even with his testimony and the

---

[3]As we stated above, to prove causation under their theory of the case, Appellants had to make two showings: first, that Taylor would not have sustained his injuries had he not been ejected from the BMW; and second, that the BMW would not have split apart, thereby allowing Taylor's ejection, had its spot welds been properly manufactured. Even if all of the excluded testimony had been admitted, Appellants failed to make the second showing.

testimony of Dr. McLellan, Appellants failed to establish causation.

## CONCLUSION

Because the district court did not abuse its discretion when it excluded Appellants' crash test and their expert testimony related to the crash test, and because the testimony of Appellants' two remaining experts did not create a genuine issue of material fact regarding causation, we AFFIRM the court's entry of final judgment in favor of Appellees.

**AFFIRMED.**