# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2018

Lyle W. Cayce
Clerk

No. 16-31259

————

ATLANTIC SPECIALTY INSURANCE COMPANY; NICHOLAS CHAD GONZALEZ,

      Plaintiffs - Appellants

v.

PORTER, INCORPORATED, doing business as Formula Boats,

      Defendant - Appellee

————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-570

————

Before HIGGINBOTHAM and HIGGINSON, Circuit Judges.*

PER CURIAM:**

      This case arises from a fire onboard the *Budget Bender*, a recreational yacht owned by Appellant Chad Gonzalez and insured by Appellant Atlantic Specialty Insurance Company. The *Budget Bender* caught fire while secured in

---

    * Judge Edward Prado, a member of the oral argument panel in this case, retired from the court on April 2, 2018, and, therefore, did not participate in this opinion. This case is being decided by a quorum. *See* 28 U.S.C. § 46(d).

    ** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

its usual slip at a marina in Slidell, Louisiana. Appellants sued the boat's manufacturer, Porter, Inc., alleging claims under redhibition and the Louisiana Products Liability Act.[1] Specifically, Appellants allege that the *Budget Bender* contained a defect that allowed water to drip from the deck and wet bar area into the wiring harness below, leading to corrosion of certain bundled electrical wires known as "pigtails" on the port side of the boat. Appellants theorized that this corrosion caused an electrical current to travel through the boat's wiring system until it melted wires that in turn ignited a factory-installed sectional sofa on the starboard side of the vessel. By contrast, Porter maintains that the cause of the fire is undetermined, and that there is "nothing to indicate" a connection between the corroded pigtail and the fire.

Appellants retained three experts: marine surveyor Guy Plaisance, electrical engineer Troy Little, and fire investigator Gary Jones. Each of these experts visited the boat individually, and they also participated in a "joint inspection" with two Porter representatives.[2] Porter filed motions in limine to exclude each expert, and the district court granted the motions to exclude Little and Plaisance. Then, after a two-day bench trial, the court found that Appellants failed to establish that the fire occurred because of a redhibitory defect or an unreasonably dangerous design flaw and rendered judgment in favor of Porter. Appellants now challenge the district court's exclusion of Plaisance and Little, as well as its ultimate judgment.

After careful review of the record, the parties' briefs, and with the benefit of oral argument, we find no reversible error and, accordingly, affirm.

---

[1] Appellants also alleged breach of contract and negligence but dropped their breach of contract claim before trial and have abandoned any freestanding negligence claim on appeal.

[2] The joint inspection also included a representative from another company, Molex, that manufactured some of the electrical connectors onboard the *Budget Bender*. The joint inspection ruled out the Molex connectors as a possible cause of the fire.

No. 16-31259

I.

A district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[3] A trial judge serves as a gatekeeper and "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[4] "Any step that renders the [expert's] analysis unreliable . . . renders the expert testimony inadmissible."[5] And "[w]here an expert's opinion is based on insufficient information, the analysis is unreliable."[6]

We review the admission or exclusion of expert testimony for abuse of discretion. "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[7]

A.

Appellants' first excluded expert, Guy Plaisance, inspected the *Budget Bender* twice in the month following the fire. Months later, he returned to the boat to perform a "hose test," in which he directed water from a garden hose onto the boat's wet bar and tracked where the water ended up. He later

---

[3] Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). While "[m]ost of the safeguards provided for in *Daubert* are not as essential" in the context of a bench trial, a trial judge may still exclude expert testimony that is either unreliable or irrelevant. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

[5] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (internal quotation marks omitted).

[6] *Id.*

[7] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "If we find an abuse of discretion . . . , we next review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party." *Id.*

repeated the experiment on another Porter vessel with a similar wet bar configuration. According to Plaisance, these "tests" revealed that "water running on the [wet] bar top" would "drip or flow down onto the DC wiring harnesses" directly below. Plaisance claimed that this water intrusion was "a direct result of a defective design and workmanship by [Porter]," and that it caused the electrical short that led to the fire.

As a general rule, district courts have wide discretion to admit evidence of experimental tests.[8] The standard for admissibility turns on what an experiment is intended to demonstrate. If it is meant to be a simulation or re-creation of what actually happened, it must be performed under "substantially similar conditions."[9] In that case, "the burden is upon the party offering evidence of out-of-court experiments to lay a proper foundation demonstrating a similarity of circumstances and conditions."[10] While an experiment need not "precisely reproduce[]" every condition, it must be "so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed."[11] By contrast, "[i]f a party offers the demonstrative evidence only as an illustration of general scientific principles, . . . it need not pass this 'substantial similarity' test."[12]

Here, the district court concluded that the "hose tests" were intended to recreate the event that allegedly caused the fire—i.e., water dripping from the wet bar into the wiring harness. Accordingly, Appellants needed to show that the experiment occurred under conditions that were substantially similar to Gonzalez's use and maintenance of the *Budget Bender* before the fire. The

---

[8] *Barnes v. General Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977).

[9] *Id.*

[10] *Id.*

[11] *Id.* (internal quotation marks omitted).

[12] *McCune v. Graco Children's Products, Inc.*, 495 F. App'x 535, 540 (5th Cir. 2012) (unpublished); *see also Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir. 2006).

district court found that Appellants failed to meet that burden. The court noted that Plaisance's videos did not contain important information about how he conducted the experiment, such as "how long the hose ha[d] been running" or "the pressure of the water coming out of the hose." Moreover, the video showed "a continuous stream of water from a garden hose directly at the junction between the back of the wet bar and the boat's wall," and there was no indication that Gonzalez ever used a hose in that fashion. In fact, as the district court noted, Plaisance did not provide any information about how Gonzalez typically washed the boat. The court concluded that given these "critical missing details," Plaisance could not make a "fair comparison" between the hose-test videos and the conditions that allegedly led to the fire. On that basis, it excluded the videos. Next, the court excluded Plaisance from testifying since his opinions were "based on the unreliable hose tests," and thus there was "no evidentiary basis for his testimony."

On appeal, Appellants do not argue that Plaisance should have been allowed to testify after the videos were excluded, nor do they claim to have met the substantial similarity requirement. Instead, Appellants insist only that the hose-test videos were not intended as a re-enactment or a simulation, and thus the substantial similarity requirement should not apply. We disagree. Plaisance conducted the hose test "to determine how water was entering the machinery space wire harness," which goes directly to Appellants' theory of the case.[13] Because Appellants failed to show a substantial similarity of circumstances and conditions, and because Plaisance's conclusions were based

---

[13] Similarly, Appellants now contend that "these tests were offered to show only that water will leak behind the wet bar, ultimately travel to the engine room, and land on the wiring harness there, which would explain the corrosion, then a short circuit, and then a fire, as it did in this matter." Once again, this detailed description reveals that the experiment was not merely an illustration of general scientific principles.

No. 16-31259

on the unreliable tests, the district court did not abuse its discretion in excluding Plaisance's report and testimony.

B.

Appellants' second excluded expert, Troy Little, visited the *Budget Bender* on three occasions in 2014, and he submitted a four-page report on his findings. Little stated that after his first visual inspection, he was able to confirm that the fire originated near the sectional sofa on the starboard side of the vessel. He further claimed that during the joint inspection, he discovered "evidence of significant burning" behind the sofa and "evidence of electrical activity and conductor severing" in the nearby DC wiring harnesses. Little also observed "a deteriorated pigtail connection" that was "corroded and exhibited signs of electrical damage consistent with that of water intrusion."

After visually inspecting the damage, Little attempted to perform a "wiring analysis" using a wiring diagram but was "unable to accurately determine the relationship" between the port-side pigtail connector and the fire origin area. Little then returned to the *Budget Bender* to conduct a "field wiring analysis." Little's report revealed that even after this analysis, "[a] complete determination of which devices may have been involved and whether or not the ground circuit was involved ha[d] not been determined." Nonetheless, he theorized that water flowing from the wet bar corroded the pigtail connector and caused a short circuit, which in turn energized circuits with no circuit breaker protection, causing an electrical current to travel through the boat's electrical connections until they overheated and started the fire.

The district court found that while Little's theory "seem[ed] possible, his report and subsequent deposition reveal two fatal flaws in his methodology that undercut its reliability." First, Little did not provide critical data such as "when the short circuit occurred, the magnitude and duration of the current

generated by the short circuit, or the amount of energy created and the temperature generated." The court found that "[w]ithout this data, Little's proposed cause of the fire is nothing more than a possibility rooted in speculation," and that the data he does rely on is "at best equally consistent with being the cause of the fire and an effect of the fire." Second, the district court emphasized that Little "never did any testing to confirm his hypothesis," even though he could have conducted tests to "clarify absolutely" whether the corrosion was a cause or effect of the fire.[14]

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[15] Based on our review of the record, it is apparent that the district court did not err in finding that such a gap existed here. Therefore, we find no abuse of discretion in the district court's exclusion of Little's testimony.

## II.

We turn now to the merits of Appellants' claims. The district court issued its Findings of Fact and Conclusions of Law after a two-day bench trial in which it heard testimony from Appellant Chad Gonzalez, Appellants' remaining expert, Porter's expert, and two Porter employees. The court found that the cause of the fire was undetermined and, relatedly, that Appellants had failed to establish the existence of a redhibitory defect or an unreasonably

---

[14] During his deposition, Little admitted that he expected to conduct some additional testing, though he insisted that he "[thought] that [his] opinion of what's going on with that pigtail [was] still accurate." He further explained that he described the damage as "consistent with that of water intrusion," rather than "caused by water intrusion" because he "would probably withhold 'caused by' as an absolute until after . . . additional testing . . . where [he] can get some more confirmation . . . ."

[15] *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

dangerous design flaw by a preponderance of the evidence. The court then rendered judgment in favor of Porter.

Having reviewed the briefs, the applicable law, and the pertinent portions of the record, we see no error that warrants disturbing the court's findings or its judgment. Accordingly, we affirm.