[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 15-11277, 15-12650
_____

D.C. Docket No. 9:12-cv-80898-KLR


ADT LLC,
a Delaware limited liability company,

Plaintiff-Appellant,

versus

ALARM PROTECTION TECHNOLOGY FLORIDA,
LLC, a Florida limited liability company,
JACOB DAHL, ADAM DALTON SCHANZ,
ALARM PROTECTION TECHNOLOGY LLC,
ALARM PROTECTION TECHNOLOGY
HOLDINGS, LLC, ALARM PROTECTION
TECHNOLOGY MANAGEMENT, LLC,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 24, 2016)

Before WILLIAM PRYOR and DUBINA, Circuit Judges, and ROBRENO,[*] District Judge.

PER CURIAM:

This case involves two sets of letters: ADT and APT. Plaintiff ADT is a well-known provider of burglar and fire alarm systems. Defendant Alarm Protection Technology ("APT" or "Alarm Protection") sells alarm systems on a door-to-door basis. ADT sued Alarm Protection for unfair competition and trademark infringement based on its use of "APT" in its sales pitch. A jury returned a verdict in Alarm Protection's favor, and ADT now appeals the district court's refusal to give three of ADT's requested jury instructions. In a separate appeal, which is now consolidated with the first, ADT takes issue with the district court's denial of ADT's motion to stay payment of the preliminary injunction bond pending this appeal. After reading the briefs, reviewing the record below, and hearing oral argument, we affirm the district court in all respects.

## I.    BACKGROUND

Adam Schanz began selling alarm systems door-to-door in 2004. In 2008, Schanz formed Alarm Protection Technology LLC in Utah, adopting "APT" as a d/b/a name for his company. In 2011, Schanz formed a number of other entities, including Alarm Protection Technology Florida LLC. The company used "APT"

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

on their yard signs, in their website URL, in their toll-free number, and in their sales literature.

In 2012, ADT LLC began receiving reports from its Florida customers that Alarm Protection's sales agents were going to ADT customers' homes and asking if they were interested in an "upgrade" to their ADT alarm systems. According to ADT, the "upgrade" pitch, combined with the similarity in names, misled customers into signing contracts with Alarm Protection under the erroneous belief that they were upgrading their current ADT systems.

ADT initially sued Alarm Protection for deceptive trade practices under the Lanham Act, 15 U.S.C. § 1125(a)(1), and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq., as well as intentional interference with contractual relations and commercial disparagement. ADT sought and obtained a preliminary injunction to bar Alarm Protection from using the sales pitch in its door-to-door sales.

ADT later amended its complaint to add a separate claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), (c). Thereafter, ADT sought and obtained a second preliminary injunction to bar Alarm Protection from using the "APT" acronym in commerce pending trial. ADT was ordered to post a $100,000 bond to protect Alarm Protection with respect to the injunction. ADT later filed a Second Amended Complaint to name other Alarm Protection entities.

3

With trial approaching, ADT moved in limine to prevent Alarm Protection from introducing evidence of the company's "Clarification Questionnaires" and "Welcome Calls," which were used to dispel customer confusion. ADT based its motion on the "initial interest confusion" doctrine. The district court denied the motion, explaining that the Eleventh Circuit has not recognized the doctrine.

At trial, ADT customers testified that Alarm Protection's sales agents began their pitch by identifying themselves as working for "APT," which, according to customer testimony, sounds like "ADT" through the door during a door-to-door introduction. Part of Alarm Protection's defense theory was that it had cured any possible confusion at the initiation of the door-to-door sale by the transaction's close. Alarm Protection argued that customers signed a "Clarification Questionnaire" to affirm their understanding that the sales agent represented only Alarm Protection. The customer later participated in a "Welcome Call," during which an Alarm Protection operator explained that Alarm Protection is unrelated to any other company.

ADT also requested a jury instruction on the initial interest confusion doctrine, despite the district court's earlier denial of ADT's motion in limine on those same grounds. ADT also requested an instruction on the "type and strength of mark." This requested instruction stated that "the law provides expanded protection for trademarks made up of acronyms or letter combinations, because it

4

is more difficult to remember a series of arbitrary letters." ADT sought an additional instruction stating that Schanz could be individually liable for any infringements that he caused by creating and doing business with the "APT" mark.

The district court declined to give these requested instructions. At the charge conference, the district court explained that it had "done a lot of reading of cases," and determined that "the initial interest confusion [doctrine]" had not been "adopted." The district court proposed that the jury verdict form include a specific question to ask whether there was "confusion at the initial interest time." Neither party objected to the proposed verdict form.

Ultimately, the district court, basing its instruction on the Eleventh Circuit Pattern Civil Jury Instruction for trademark infringement, explained to the jury that

> [i]t is not essential that the acronym used by Defendants be an exact copy of ADT's trademark. Instead, ADT must demonstrate by a preponderance of the evidence that Defendants' use of its trademark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval or sponsorship of the goods in question.

See 11th Cir. Pattern Civ. Jury Instr. 10.1 (2013).

Additionally, instead of giving the specific "type and strength" instruction requested by ADT, the district court explained that "[t]he first factor" the jury should consider "in determining whether a likelihood of confusion exists" is "the type and strength of the mark." The district court further stated that "ADT's

5

trademark is an arbitrary trademark that is a strong trademark," and it provided a definition and example of an arbitrary trademark.

As to corporate and individual liability, the district court instructed that "a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company." Finally, regarding the trademark infringement count, the district court instructed the jury that "ADT claims that Alarm Protection Technology, Alarm Protection Technology Florida, Alarm Protection Technology Management and Alarm Protection Technology Holdings and Adam Schanz have infringed its registered trademark."

After the district court delivered the jury instructions, it reviewed the verdict form with the jury. The district court addressed the second question on the verdict form, which asked whether the jury "find[s] from a preponderance of the evidence that the Defendants' use of the trademark caused a likelihood of initial interest confusion as to Defendants' affiliation with ADT." The district court specifically stated that "[i]nitial interest confusion is another word for saying initially at the door, not necessarily later on the sale."

The jury returned a verdict in Alarm Protection's favor, and the district court entered judgment on the verdict. ADT did not file a renewed motion for judgment as a matter of law or motion for a new trial, but rather filed only a notice of appeal.

After entry of judgment, Alarm Protection moved to recover on the injunction bond posted earlier by ADT, which the district court granted over ADT's objection. ADT then posted a supersedeas bond and appealed the district court's ruling on the injunction bond. We consolidated the two appeals, and both are presently before the Court.

## II.    STANDARD OF REVIEW

We review a district court's refusal to give a requested jury instruction for abuse of discretion. Burchfield v. CSX Transp., Inc., 636 F.3d 1330, 1333 (11th Cir. 2011). A district court abuses its discretion by refusing to give a requested instruction "only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." Id. at 1333–34 (quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1287 (11th Cir. 2008)).

"When the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1283 (11th Cir. 2008) (quoting Somer v. Johnson, 704 F.2d 1473, 1477–78 (11th Cir. 1983)). The Court will reverse only if "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1543 (11th Cir. 1996)

(quoting Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1372 (11th Cir. 1981)).

## III.    DISCUSSION

ADT argues that the district court abused its discretion in refusing to give its requested jury instructions as to (1) the "initial interest confusion" doctrine; (2) the protections provided to trademarks consisting of words and letter combinations; and (3) a company owner's individual liability for trademark infringement. We address each argument in turn.

### 1.  Initial Interest Confusion Instruction

ADT first argues that its proposed "initial interest confusion" instruction correctly stated that "a defendant violates the law when it causes confusion only before a sale . . . even if the customer understands the defendant's identity by the time the sale is actually made." The Eleventh Circuit has not yet decided whether a trademark infringement claim based on "initial interest confusion" is actionable under the Lanham Act. See Suntree Techs. Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1347 (11th Cir. 2012) (declining to address the issue). Courts of appeals in other Circuits, however, have held that such a claim is actionable. See, e.g., Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1238–39 (10th Cir. 2006); Gen. Motors Corp. v. Keystone Auto. Indus., Inc., 453 F.3d 351, 355 (6th Cir. 2006) (describing the doctrine as "confusion at the point of sale"); Louis Vuitton

8

Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 n.2 (2d Cir. 2005); Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 292 (3d Cir. 2001); Interstellar Starship Servs., Ltd. v. Epix Inc., 184 F.3d 1107, 1110 (9th Cir. 1999); Elvis Presley Enters. Inc. v. Capece, 141 F.3d 188, 204 (5th Cir. 1998); Dorr-Oliver, Inc. v. Fluid-Quip, Inc., 94 F.3d 376, 382 (7th Cir. 1996); Downtowner/Passport Int'l Hotel Corp. v. Norlew, Inc., 841 F.2d 214, 219–20 (8th Cir. 1988) (discussing "likelihood of confusion that initially existed"). But see Lamparello v. Falwell, 420 F.3d 309, 316 (4th Cir. 2005) ("[W]e have never adopted the initial interest confusion theory; rather, we have followed a very different mode of analysis, requiring courts to determine whether a likelihood of confusion exists by 'examin[ing] the allegedly infringing use in the context in which it is seen by the ordinary consumer.'" (second alteration in original) (quoting Anheuser-Busch, Inc. v. L&L Wings, Inc., 962 F.2d 316, 319 (4th Cir. 1992)). But we need not decide whether the "initial interest confusion" theory is actionable because, even if it were, the district court's failure to give the requested instruction did not prejudicially harm ADT.

During the charge conference, the district court denied ADT's requested instruction on "initial interest confusion." The district court explained that it would include a special interrogatory on the jury verdict form instead. If the jury were to find that there was confusion, the district court proposed "to have a sub-question

9

A: Was the confusion at the initial interest time, yes or no; was there confusion at the contract time, yes or no." ADT did not object to the proposed solution.

After the district court instructed the jury on the trademark infringement count, the court reviewed the verdict form with the jury and specifically stated that "[i]nitial interest confusion is another word for saying initially at the door, not necessarily later on the sale." This explanation adequately addressed ADT's initial interest theory.

The Court is not persuaded by ADT's argument that the district court's use of the Eleventh Circuit pattern instruction on trademark infringement foreclosed the jury from fairly considering ADT's theory. The district court instructed the jury that "ADT must demonstrate by a preponderance of the evidence that Defendants' use of its trademark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval or sponsorship of the goods in question." See Pattern Civ. Jury Instr. 11th Cir. 10.1. Considering Alarm Protection's trademark use "in its entirety" did not bar the jury from considering ADT's theory of initial interest confusion, because the "entirety" of Alarm Protection's actions include its actions at the initial stage of the sale. Even those circuits that have recognized the initial interest doctrine have not included any reference to the doctrine in their pattern instructions. See, e.g., Fed. Civ. Jury Instr. 7th Cir. 13.1.2 (2008). And even some, in a manner similar to the Eleventh Circuit, maintain

reference to "the total" or "all" of the defendant's actions. See, e.g., Model Civ. Jury Instr. 9th Cir. 15.16 (2007) ("[Y]ou must consider all relevant evidence in determining [the likelihood of confusion]."); see also 3A Fed. Jury Prac. & Instr. § 159:25 (6th ed. 2015) ("[E]ach [likelihood of confusion factor] should be weighed in light of the total evidence presented at trial."). Therefore, because the failure to give the instruction did not prejudicially harm ADT, the district court did not abuse its discretion.

### 2.  Protections for Trademarks that Consist of Words and Letter Combinations

ADT also appeals the district court's refusal to give an instruction stating that "the law provides expanded protection for trademarks made up of acronyms or letter combinations, because it is more difficult to remember a series of arbitrary letters." But ADT's requested instruction did not correctly state the law and the district court's failure to give the instruction did not prejudicially harm ADT.

First, we agree that the requested instruction did not correctly state the law. It is true that "letter marks [are] generally accorded broader trademark protection because 'it is more difficult to remember a series of arbitrarily arranged letters than it is to remember words, figures, phrases, or syllables.'" CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 684 (7th Cir. 2001) (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:33 (4th ed. 2015)). This broader protection results from an application of the likelihood-of-confusion

11

factors, one of which is the strength of the mark. See, e.g., Kadant, Inc. v. Seeley Mach., Inc., 244 F. Supp. 2d 19, 27–29 (N.D.N.Y. 2003) (stating that the "[p]laintiff's mark--AES--has inherent distinctiveness" as an arbitrary acronym, which indicates the mark's strength for purposes of the likelihood-of-confusion analysis); Dere v. Inst. for Sci. Info., Inc., 420 F.2d 1068, 1069 (C.C.P.A. 1970) ("We conclude that it is more difficult to remember a series of arbitrarily arranged letters than it is to remember figures, syllables, or phrases, and that the difficulty of remembering such multiple-letter marks makes the likelihood of confusion between such marks, when similar, more probable.").

But the mark is not afforded "expanded" protection as a matter of law simply because it is a word or letter combination. Indeed, none of the cases on which ADT relies describe the protection afforded to acronyms and letter combinations as "expanded." See, e.g., CAE, Inc., 267 F.3d at 684–85 (stating only that "confusion is more likely" between "arbitrarily arranged letters" than other categories of marks) (quoting Edison Bros. Stores, Inc. v. Brutting E.B. Sport-Int'l Gmbh, 230 U.S.P.Q 530, 533 (T.T.A.B. 1986)); Kadant, 244 F. Supp. 2d at 29 (considering the similarity in acronyms "[t]o determine whether such confusion is likely"). Therefore, the requested instruction is not a correct statement of the law.

Second, even if it were a correct statement of the law, the district court's failure to give the requested instruction did not prejudicially harm ADT, because

12

the proposed instruction was substantially covered by another instruction. See

Goulah v. Ford Motor Co., 118 F.3d 1478, 1485 (11th Cir. 1997). Here, the district

court instructed the jury that "[t]here are seven factors you can use to determine

whether a likelihood of confusion exists" and "[t]he first factor is the type and

strength of the trademark." Specifically, the district court told the jury that "ADT's

trademark is an arbitrary trademark that is a strong trademark," proceeded to define

an arbitrary mark, and provided an example. Therefore, ADT was not prejudicially

harmed by the district court's failure to give the requested instruction.

### 3.  Adam Schanz's Individual Liability

Finally, ADT appeals the district court's refusal to instruct the jury on

Schanz's individual liability. ADT sought an instruction stating that Schanz could

be directly liable for any infringements that he caused by creating and doing

business with the "APT" mark. The proposed instruction would have explained

that "ADT, LLC has alleged that Adam Schanz is individually liable for trademark

infringement" and "[i]ndividuals, as well as companies, may be liable for

trademark infringement." It would have also stated that "[i]f an individual actively

and knowingly caused the infringement as a moving, conscious force, then he can

be liable for trademark infringement, if ADT, LLC is able to prove all other

elements of its claim against that individual." The district court declined to give the

instruction.

First, the requested instruction correctly stated the law. "Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act" if, as a business entity's agent, an individual "actively caused the infringement, as a moving, conscious force." Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477–48 (11th Cir. 1991) (citing Mead Johnson & Co. v. Baby's Formula Serv., Inc., 402 F.2d 19 (5th Cir. 1968)). "Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1184 (11th Cir. 1994).

Alarm Protection's status as a limited liability company, rather than a corporation, is a distinction without a difference. Individual liability for trademark infringement does not turn on corporate form. Rather, it turns on the principle that "[i]f an individual actively and knowingly caused the trademark infringement, he is personally responsible." Id. (quoting Chanel, 931 F.2d at 1477). Therefore, ADT's requested instruction as to Schanz's individual liability correctly stated the law.

Second, the issue was properly before the jury. See Nat'l Fire Ins. Co. v. Hous. Dev. Co., 827 F.2d 1475, 1482 (11th Cir. 1987). It was Schanz, as Alarm Protection's sole owner, who chose Alarm Protection's business name, selected its d/b/a acronym, and trained its sales agents on the door-to-door sales tactics. The

14

jury could have considered this evidence to determine whether Schanz "actively and knowingly" and "as a moving, conscious force" caused the alleged infringement. Chanel, 931 F.2d at 1477–78. Therefore, the issue was properly before the jury.

But the district court did not abuse its discretion because ADT was not prejudicially harmed. The district court's refusal to given the individual liability instruction was, at most, harmless error. The district court instructed the jury that ADT's infringement claims were against the Alarm Protection Technology business entities, as well as Adam Schanz.

Moreover, the district court instructed the jury that "a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company." Accordingly, under agency principles, Alarm Protection's liability and Schanz's liability were coextensive. And because the jury did not find Alarm Protection liable for trademark infringement, which it could have done only based on Schanz's individual actions, the absence of an individual liability instruction did not affect the case's outcome. Therefore, the district court's refusal to give the requested instruction does not warrant reversal.

Because no reversible error occurred, the Court need not address ADT's request for entry of judgment as a matter of law. Likewise, the Court need not

15

address ADT's challenge to the post-judgment order that required ADT to pay the

injunction bond, because ADT was not successful in this appeal.

## IV. CONCLUSION

We **AFFIRM** the decisions of the district court.