[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15185
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00051-KD-C

CAROLYN BATES,

Plaintiff-Appellant,

versus

UNITED STATES GENERAL SERVICES ADMINISTRATION,
UNITED STATES FEDERAL GOVERNMENT/COURTHOUSE,
UNITED STATES OF AMERICA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(May 26, 2017)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

A wobbly bench in Selma, Alabama's federal courthouse injured Carolyn Bates. She sued the United States for negligence and, after a bench trial, was awarded damages based on her medical bills incurred on the day of the injury, as well as costs. On appeal, Bates contends that the district court erred in determining that the accident did not proximately cause her ongoing pain and injuries, basing its award of damages on evidence not introduced at trial, making various evidentiary determinations, and declining to tax costs to the extent requested. After careful review, we affirm.

## I.    FACTUAL BACKGROUND

### A.    Bates's Accident and Medical Treatment

Bates, a volunteer non-attorney representative for a Social Security disability claimant, visited the federal courthouse in Selma to attend a hearing for her client, a minor. She took the elevator to the second floor and sat on a wooden bench in the hallway. The bench, which was not fastened to the floor, moved forward, and Bates lost her balance. The falling bench struck Bates on her neck, right shoulder, back, and right hip. Bates reported the incident to Betty Davis, a court security officer, who prepared an Offense/Incident Report. General Services Administration ("GSA") Supervisory Building Manager Kevin Lear received the report soon thereafter.

2

After initially believing her injury was not serious, Bates went to the emergency room ("ER") at Vaughan Regional Medical Center for lingering pain. ER notes indicate that she was treated for an accident, her chief complaint being traumatic pain in her neck, right hip, back, and legs. Bates experienced muscle spasms during a physical examination; she was given a hip injection and prescribed pain medication. Bates wrote Lear a letter seeking payment for her ER bills, which she said totaled $1,543.33. She also notified GSA that she would seek further medical treatment.

Bates sought additional treatment from Dr. John Park, who determined that she did not suffer a compression fracture or significant disc bulge, but that she did suffer multilevel disc desiccation and discogenic and facet degenerative changes. Dr. Park expressed no opinion as to these conditions' origins. Bates continued to seek treatment from several doctors, including Dr. Laura Kezar, who diagnosed Bates with degenerative changes, osteopenia, and minimal mid thoracic spondylosis, but not malalignment of the lumbar spine, and concluded that the bench accident "may have been the cause of [Bates's] pain or this may simply represent normal aging wear and tear changes of the spine with exacerbation related to an acute contusion or sprain." Doc. 204-3 at 95.[1] No other doctor

---

[1] All references to "Doc. __" refer to the numbered district court docket entries.

identified the bench accident as the cause or a potential cause of Bates's continuing pain and injuries.

## B.    Bates's Lawsuit and Trial

Bates brought a claim against the United States for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*[2]  She sought compensatory damages for medical expenses, lost household services, loss of enjoyment and quality of life, as well as costs, and such other and further relief as the court would deem proper.

At the non-jury trial, Bates testified that she experienced "excruciating pain" as a result of the bench accident, Doc. 191 at 34, and that she continued to suffer pain in her hands and shoulders, spinal and nerve damage, partial loss of functionality in her hands, and total loss of functionality in her right arm.  She also testified that she takes daily pain medication, receives multiple injections for hip bursitis per year, is enrolled in physical therapy, and can no longer drive or clean her house.  Bernette Shields, the mother of Bates's minor client, testified that she witnessed the bench topple onto Bates, though she could recall few other details

---

[2] Bates's initial complaint brought negligence and negligent infliction of emotional distress claims against the United States, GSA, and three unnamed defendants.  The United States filed a motion to dismiss all of Bates's claims against GSA on the ground that the United States was the only proper defendant under the FTCA.  *See* 28 U.S.C. § 2679(b)(1).  The district court granted the motion.  Bates's first amended complaint added a claim of gross negligence.  She later sought leave to file a second amended complaint, which the district court granted in an order that limited the complaint's scope to a single count of negligence against the United States.

4

about that day.  Marvin Shields, the client's father, also testified that he saw the bench flip onto Bates, but he too remembered few details about the incident.  Bates introduced medical documents that included Dr. Park's analysis of her condition, which the court admitted into evidence.  The government introduced Dr. Kezar's assessment of Bates's injuries, which the court admitted into evidence.

The district court determined that the government had breached its duty of care to Bates.  It credited Bates's testimony that the bench had hit her, but found Bernette's and Marvin Shields's testimony to be unreliable due to their inability to "recall anything else from that date, even though it was their child's disability hearing."  Doc. 184 at 2 n.2.  The court found that the bench accident caused the injuries for which Bates received treatment at the ER that same day, but that the accident did not proximately cause Bates's ongoing injuries and pain.  The district court found Bates's testimony regarding her later injuries and pain not to be credible, observing that she sought no additional treatment for months after visiting the ER, she seemed to exaggerate her symptoms and ability to function at trial, and her descriptions of her pain were not adequately supported by medical evidence or expert testimony.

The court awarded Bates $1,543.33 in damages for the medical bills she incurred visiting the ER, basing the amount on the letter she had written to Lear.  It also awarded her taxable costs totaling $736.30 for deposition transcripts, a CD

5

recording of a hearing before the magistrate judge, a pretrial conference transcript, and witness fees. This amount reflected all of the costs Bates had requested, with the exception of the cost of deposing her home care assistant, Irene McNeil, which the district court declined to award because it could not discern how the deposition was necessary to the case.

This is Bates's appeal.

## II.    STANDARD OF REVIEW

After a bench trial, "[w]e review the district judge's findings of fact for clear error and conclusions of law *de novo*," *Whitley v. United States*, 170 F.3d 1061, 1068 n.14 (11th Cir. 1999), including when reviewing its calculation of damages, *see Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1339 (11th Cir. 1997). We accord great deference to the trial court's credibility determinations, as "the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). This means "we must accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (alteration and internal quotation marks omitted).

"We review a district court's evidentiary rulings for abuse of discretion. . . . [W]e will leave undisturbed a district court's [evidentiary] ruling unless we find

6

that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333 (11th Cir. 2011) (internal quotation marks omitted). "Moreover, we will not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect." *Id.* (internal quotation marks omitted).

Similarly, "we review a district court's decision about whether to award costs to the prevailing party for abuse of discretion." *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007). "An abuse of discretion occurs if the trial judge bases an award or denial upon findings of fact that are clearly erroneous." *Id.*

## III.   ANALYSIS

On appeal, Bates contends that the district court erred in determining that the bench accident did not proximately cause her ongoing injuries and pain, calculating the damages award based on evidence not introduced at trial, making various evidentiary determinations, and declining to tax the cost of McNeil's deposition. We conclude that Bates has identified no error on the district court's part. Accordingly, we affirm.

### A.   Proximate Causation

Bates argues that the district court issued an erroneous judgment and award of damages because the evidence admitted at trial substantiates her theory of proximate causation under the "Sudden Onset Doctrine." Bates raised her "Sudden

7

Onset" theory of proximate causation for the first time on appeal. She claims that the district court held the United States liable under the Sudden Onset Doctrine. There is no mention of a "Sudden Onset Doctrine" in the court's order, however. Bates never mentioned this theory in her complaints or at trial, nor did it arise during discovery.[3] This Court "generally will not consider an issue or theory that was not raised in the district court." *Narey v. Dean*, 32 F.3d 1521, 1526 (11th Cir. 1994) (internal citations omitted).[4] We thus decline to consider Bates's "Sudden Onset" argument. Because she raises no other arguments that the district court's proximate cause determination was erroneous, we affirm as to that issue.

## B.    Calculation of Damages

Bates argues that the district court erred by awarding damages based on evidence not introduced at trial. The district court awarded Bates $1,543.33 in damages, which represented the amount of her ER medical bills according to a letter she had written to Lear in November 2009. Bates is correct that the letter was never actually admitted into evidence at trial. However, she identifies no evidence showing that the amount of her ER bills was incorrect. Accordingly— and particularly given that this was a bench trial in which the district judge was the

---

[3] In fact, the phrase "sudden onset" appears nowhere in the record except for two pages of hospital records, neither of which supports Bates's theory of proximate causation or formed the basis for the district court's determination.

[4] Although we have recognized exceptions to this rule, *see Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360-61 (11th Cir. 1984), Bates has not shown that any of the exceptions applies here.

fact finder—she cannot show that the court's erroneous reliance on the letter to Lear prejudiced her case.  As such, we affirm the district court's damages award.

## C.    Admission of Evidence

Bates argues that the district court abused its discretion with respect to various evidentiary matters: excluding evidence that should have been admitted, relying on evidence that had not been admitted, and failing to credit credible testimony.  We conclude that the district court did not abuse its discretion as to any of the challenged evidentiary matters.

First, Bates argues that the district court improperly excluded evidence, including a medical report by Dr. Kezar, that Bates asserts would have supported her case.  Dr. Kezar's report is the only piece of excluded evidence that Bates actually identifies on appeal.  "A party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected."  Fed. R. App. P. 28(e).  "The burden of proof is on the appellant" to show that the district court improperly excluded evidence that it should have admitted, "and this court is not required to search the [record] for error."  *United States v. Francis*, 131 F.3d 1452, 1458 (11th Cir. 1997).  Bates's argument that the district court improperly excluded evidence does not comport with Rule 28(e).  She cites no specific pages in the appendix or transcript where the district court rejected any evidence that she offered.  And,

9

although she identifies Dr. Kezar's report, she makes only the conclusory allegation that it was wrongly excluded. Without more, we cannot ascertain what evidence, if any, erroneously was excluded, nor can we say that the district court abused its discretion.

Second, Bates argues that the district court erred in relying on Dr. Park's medical records to determine that the bench accident did not proximately cause her ongoing injuries and pain because those records were not introduced into evidence at trial. She is incorrect. The district court's order cited to Bates's own trial exhibit containing the medical records, which the court had admitted into evidence, as the source of Dr. Park's analysis. To the extent Bates asserts that the district court erred in admitting Dr. Park's records, she fails to explain why their admission was erroneous or how any error was not invited since she affirmatively moved for the admission of the records herself. *See United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." (internal quotation marks omitted)). As such, the district court did not abuse its discretion in relying on Dr. Park's records.

Third, Bates argues that the district court abused its discretion in declining to credit Bernette's and Marvin Shields's testimony that the bench injured her. The district court based its credibility determination on the Shields's inability to recall

details from the date of the accident, even though they were at the courthouse for their child's disability hearing.  Bates has not shown that this finding was "contrary to the laws of nature" or "so inconsistent or improbable on its face that no reasonable factfinder could accept it."  *Ramirez-Chilel*, 289 F.3d at 749 (11th Cir. 2002).  Nor has Bates shown prejudice, as the court credited her own testimony that the bench injured her.  We thus cannot conclude the district court abused its discretion in finding Bernette's and Marvin Shields's testimony to be incredible.

We affirm the district court as to each of its challenged evidentiary determinations.

## D.    Taxation of Costs

Next, Bates argues that the district court abused its discretion in failing to tax the United States with the cost of McNeil's deposition.[5]  The district court lacked authority to tax the cost of McNeil's deposition, however, because Bates failed to meet her burden of showing that the deposition was necessarily obtained for use in the case.  Accordingly, the district court did not err in declining to tax the deposition's cost.

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.  But

---

[5] Bates argues that the district court erred in taxing costs without specifically discussing McNeil's deposition.  Nevertheless, we construe this as an argument that the district court should have taxed the cost of McNeil's deposition because it is the only item for which costs were requested and denied.

11

costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law." Fed. R. Civ. P. 54(d)(1). Title 28 U.S.C. § 1920 permits a federal court to tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," 28 U.S.C. § 1920(2),[6] including deposition transcripts. *See EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) ("Taxation of deposition costs is authorized by § 1920(2)."). "Where the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *Id.* at 620 (alterations and internal quotation marks omitted). "[W]hether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in the case." *Id.* at 621 (internal quotation marks omitted).

Bates does not explain how McNeil's deposition was necessarily obtained for use in the case. Her failure to admit the deposition into evidence or use it in any way at trial, including for cross-examination, supports the district court's decision not to tax the cost of the deposition transcript. "[A]dmission into evidence or use during cross-examination tends to show that [a deposition] was necessarily obtained," though it is not dispositive. *Id.* Absent any showing that the district court clearly erred in finding that the McNeil deposition was not

---

[6] Section 1920 authorizes a federal court to tax other categories of costs as well, but none is relevant to this case.

12

necessarily obtained for use in the case, we cannot say it abused its discretion in declining to tax the deposition's cost.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court, as well as its taxation of costs.

**AFFIRMED.**