[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14005

Non-Argument Calendar

_____

ALEXANDER M. MCHALE,
ASHLEY N. MCHALE,

                                        Plaintiffs-Appellants,

*versus*

CROWN EQUIPMENT CORPORATION,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-00707-VMC-SPF

_____

Before WILSON, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Alexander McHale and his wife sued Crown Equipment Corporation seeking damages for injuries he sustained while operating a Crown RC 5500 forklift. After an eight-day jury trial, judgement was entered in favor of Crown. The McHales now challenges a number of the district court's evidentiary rulings. After careful review, we affirm.

## I.

Alexander McHale was injured operating a Crown RC 5500 forklift at his job in an Amazon warehouse. Working the night shift, McHale was driving faster than he should have been and collided with a steel end cap at the end of an aisle of shelving. His left foot was crushed between the steel and the forklift, and he ultimately had his leg amputated below the knee. The parties contest how McHale's leg ended up outside of the operator compartment. McHale contends that he lost his balance attempting to brake. Crown's evidence shows that McHale told the first responder that he stuck his foot outside the compartment to try to stop the forklift.

The McHales assert causes of action under Florida law for strict products liability, negligence, punitive damages, and loss of spousal consortium. The district court granted summary

judgment denying the punitive damages claim, and the rest went to a jury trial.

The Crown RC 5500 is a side-stance forklift, meaning that the operator stands and maneuvers from side to side instead of forward and back. The operator's right side faces the forks and left side faces an opening to allow for the operator to enter and exit. There is no door. The brake function of an RC 5500 is the opposite of an ordinary car brake. To drive, the operator presses down on the brake. To slow down or stop, the operator lifts his left heel off the brake.

At trial the McHales argued that the brake design and open compartment made the RC 5500 unreasonably dangerous and that Crown was negligent in ignoring past instances of operator injury. Their first theory is that the brake design is defective because it can result in the operator losing his balance as he attempts to brake in an emergency. Crown contends that the forces generated when braking are insufficient to cause the operator's foot to leave the compartment.

The McHales' second theory is that a door would have prevented his leg from exposure to the steel end cap. Crown's defense is that in designing the machine it must consider all reasonably anticipated dangers, including the forklift tipping over or falling off a loading dock. In these accidents, Crown says, a door poses a potentially fatal risk to the operator by hindering the operator from quickly exiting the forklift before it falls. Crown's evidence shows that tip-over and off-dock accidents are more

common than serious lower left leg injuries from collisions. And in those accidents, an operator is ten times more likely to be killed by remaining in the compartment than by exiting.

At the close of evidence, the jury returned a verdict in favor of Crown. The McHales brings this appeal with four challenges to the district court's evidentiary rulings.

## II.

We review a district court's rulings on the admission of evidence for abuse of discretion. *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1353 (11th Cir. 2022). The abuse of discretion standard allows a "range of choice for the district court, so long as that choice does not constitute a clear error of judgment" or is based on the wrong legal standard. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1104 (11th Cir. 2005) (quotation omitted). Even a clearly erroneous evidentiary ruling, however, will be affirmed if harmless. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). We will reverse only if the moving party demonstrates that the error "probably had a substantial influence on the jury's verdict." *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333 (11th Cir. 2011) (quotation omitted).

## III.

### A.

First, the McHales challenge the district court's admission of videos of tests that Crown performed with the RC 5500. These

videos simulate tip-over and off-dock accidents using crash dummies, otherwise known as anthropomorphic testing devices (ATD). At trial Crown used these videos to show the risks of staying in the forklift during these accidents in support of its design choice not to add a door. The McHales argue that the district court applied the wrong legal standard. In their view, the videos should be subject to the "substantial similarity test" because they depict real world events rather than mere demonstrations of physical principles.

The substantial similarity test applies to out-of-court recreations of the accident at issue. *Burchfield*, 636 F.3d at 1336.[1] To avoid unfair prejudice and confusion of the issues, the test requires that the recreation "be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed." *Id.* at 1336–37 (quotation omitted). The test does not apply where the evidence is "pointedly dissimilar" from the event at issue and "not offered to reenact the accident." *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1316 (11th Cir. 2005) (quotation omitted).

---

[1] We have also applied the doctrine "when one party seeks to admit prior accidents or occurrences involving the opposing party, in order to show, for example notice, magnitude of the danger involved, the party's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997) (alternation adopted; footnote and quotation omitted).

The substantial similarity test does not apply here because the challenged videos are intentionally dissimilar to McHale's collision accident. In fact, the videos were offered for the very reason that they depicted *different* types of accidents.

The McHales' reliance on *Burchfield* is misplaced. The plaintiff in *Burchfield* was injured when a railcar rolled down a hill it was parked on. *Burchfield*, 636 F.3d at 1332. The plaintiff's products liability case centered on the theory that the brakes were defective. *Id.* The defendant relied on a pre-trial experiment recreating the accident to demonstrate that the railcar's brake was not properly applied by the plaintiff. *Id.* at 1333–35. The defense repeatedly emphasized the purported similarities between the recreation and the circumstances surrounding the plaintiff's accident. *Id.* at 1335–36. In that situation, we reversed for a new trial because the video unfairly prejudiced the jury by not being performed under substantially similar conditions. *Id.* at 1337–38.

These videos are different. The videos Crown showed to the jury are not recreations of McHale's accident. They are videos of tests performed by Crown depicting accidents that are dissimilar to McHale's. And unlike in *Burchfield*, Crown did not use the videos to disprove McHale's theory of causation. When a party seeks to introduce evidence of pointedly dissimilar events that did not purport to depict the accident at issue, the substantial similarity test does not apply. *See Tran*, 420 F.3d at 1316; *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396–97 (11th Cir. 1997). The district court did not abuse its discretion when it admitted the test videos.

Nor are we persuaded that the videos' probative value is substantially outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 403. The dissimilarity between these videos and McHale's accident diminishes the risk of unfair prejudice, confusion of the issues, or misleading the jury. At the same time, they are probative to Crown's theory of defense by demonstrating the risks inherent in a design that includes doors. We therefore affirm the district court's ruling on the McHales' objection to the admission of the ATD videos.

## B.

Second, the McHales challenge the district court's ruling that Crown could impeach the McHales' expert using an adverse *Daubert* ruling of another court. On cross-examination, Crown briefly questioned the McHales' expert Dr. Meyer about a Southern District of Illinois order excluding his testimony as an expert witness giving substantially the same opinion. We are sympathetic to the concerns presented when using another court's *Daubert* ruling to impeach an expert. The introduction of another judge's ruling risks undermining Rule 702's directive to the trial judge to be the gatekeeper of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In making *Daubert* rulings, district judges must perform an "exacting analysis of the proffered expert's methodology" that is a "necessarily fact-laden endeavor." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quotation omitted); *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 857 (11th Cir. 2021). To assess

the basis of the other court's ruling and its relation to the case at bar, presenting a contrary *Daubert* ruling risks creating a mini-trial and confusing the issues.

Even so, it is unnecessary to decide whether the district court abused its discretion because the McHales do not argue that the error affected their substantial rights. By not "plainly and prominently" presenting argument on appeal, the McHales abandoned the issue. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (quotation omitted); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

We have "discretion to overlook a failure to argue harmlessness and to undertake *sua sponte* the task of considering harmlessness." *Horsley v. Alabama*, 45 F.3d 1486, 1492 n.10 (11th Cir. 1995). Exercising that discretion here, we find that any error committed by the district court in permitting the cross-examination was harmless. The *Daubert* ruling was not presented directly to the jury. Instead, the district court permitted one question on cross-examination. After Dr. Meyer denied any awareness of the prior ruling, defendant's counsel quickly moved on to another topic.[2] The exchange lasted less than one minute in

---

[2] Here is the exchange in full:

> Q:      Dr. Meyer, isn't it true that a judge in another Federal Court has excluded you from offering the opinion that a stand-

an eight-day trial and the issue was not revisited. It is hard to imagine this exchange having any influence on the jury's verdict. We therefore affirm the District Court's ruling.

## C.

Third, the McHales challenge the district court's exclusion of testimony from two witnesses, Jose Hernandez and Dustin Reinard, who were both injured in collision accidents similar to McHale's and unsuccessfully sued Crown. The McHales sought to use their testimony to demonstrate that other operators have lost their balance operating the RC 5500. Evidence of "prior similar incidents illustrating a potential design defect are admissible if (1) the proponent makes a showing that the prior accidents are substantially similar, (2) the prior accidents are not too remote in time, and (3) the probative value of the evidence outweighs any potential prejudice or confusion." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1350 (11th Cir. 2020). Focusing on the third prong, the district court excluded the evidence to avoid

---

up forklift truck is defective because it was designed without a door? Isn't that true?

A:    I'm unaware of that one way or another.

Q:    You're not aware of *Anderson v. Raymond*?

A:    I have no idea what the legal wrangling going on as far as that goes is.

Q:    Would you agree, Dr. Meyer, that Crown innovated the entire forklift industry by turning its operators side stance as opposed to facing the forks back in the early '70s?

confusion of the issues from the resulting "mini-trial" that would occur had their testimony been admitted. These witnesses' testimony would have opened the door to disputes concerning the facts of each of their incidents, their similarity to McHale's accident, and the outcome of their respective litigations. At the same time, the testimony's probative value was minimal. The excluded witnesses had no personal knowledge of McHale's accident and Crown's Director of Product Safety admitted at trial to being aware of other litigants who informed them of balance issues on the RC 5500. The jury was well aware of Crown's knowledge of prior incidents with the RC 5500. The district court did not abuse its discretion in excluding the testimony of Hernandez and Reinard. We affirm.

## D.

The McHales' last challenge is to the district court's separate rulings on two videos depicting off-dock forklift accidents. Under Rule 901, videos are not admissible at trial unless the proponent submits "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *United States v. Caldwell*, 776 F.2d 989, 1001 (11th Cir. 1985). "The decision of whether or not a particular piece of evidence has been appropriately identified falls within the discretionary function of the district court, and that determination will not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it." *Caldwell*, 776 F.2d at 1001 (quotation omitted).

The district court first excluded a YouTube video of a forklift operator remaining in a Crown forklift falling off a dock without being injured.  The McHales sought to show the video to the jury as part of their expert's testimony rebutting Crown's contention that doors would make the forklifts dangerous in an off-dock accident.  The video purports to be an "actual off-dock event captured on video."  As attempted foundation, McHale's expert testified to what the video showed and that it is consistent with how he believed the forklift would fall in an off-dock event.  There is no evidence of when the video was originally recorded, what device made the recording, or any witness testimony to the accuracy of the accident or whether the video had been altered.  All we know is that the video was pulled from YouTube.  With no competent evidence on the record authenticating the video, the district court did not abuse its discretion in excluding the video.

The second challenged ruling admitted Crown's video showing an operator safely stepping out of a forklift during an off-dock accident.  The foundation laid for this video does not meaningfully differ from the YouTube video the district court excluded.  Crown's Director of Public Safety was the only witness to testify to the video's authenticity.  He testified that he received it from the legal department and did not know where or when the video was filmed.  As with the YouTube video, there was no competent evidence to support the authenticity of the video to be admitted under Rule 901.  The district court thus abused its discretion when it admitted the video.

We nonetheless affirm because the error was harmless.  The McHales do not even contend that the admission of this video alone is prejudicial.  Instead, they argue that the admission of one video, but not the other, when compounded with the other claimed errors, denied them a fair trial.  We recognize that the practical effect of the district court's error was to present a video supporting the defendant's theory while excluding a video supporting plaintiffs' theory.  But the district court's error in admitting the Crown video does not entitle the McHales to a "make-up call."  Because the McHales have not shown that the admission of Crown's video probably had a substantial effect on the outcome of the trial, the error was harmless.

\*    \*    \*

We **AFFIRM** the judgment of the United States District Court for the Middle District of Florida.